**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | 1:10-cv-01013 |
| | ) | 1:07-cr-10048 |
| Raymond E. Otter Robe, | ) | |
| | ) | **ORDER DENYING MOTION** |
| | **)** | |
| Defendant. | ) | |

Before the Court is the Defendant's motion pursuant to 28 U.S.C. § 2255 and memorandum in support of motion filed on May 24, 2010. See Case No. 1:10-cv-01013, Docket Nos. 1 and 2. The motion is filed pro se. The Government filed an answer and brief in opposition to the Defendant's motion on July 26, 2010. See Case No. 1:10-cv-01013, Docket Nos. 8 and 9. The Defendant did not file a reply. For the reasons explained below, the Defendant's motion is denied.

**I.   BACKGROUND**

    **A.   Factual Background**

The following summary of the underlying facts is taken from the direct appeal:

On February 19, 2007, Otter Robe left the apartment of Allen Derockbrain's father, Joe Flying Horse, after arguing with and threatening Derockbrain with two knives, taken from Flying Horse's dish rack. Otter Robe went to Myron Oka's home. He went upstairs, spoke briefly with Lyle Oka, Myron's nephew, and used the telephone.

Myron testified that Otter Robe came back downstairs and began yelling at him, so he asked Otter Robe to leave. Otter Robe began swinging at him and hit him in the face a couple of times. Myron jumped backwards, but tripped and fell on

1

his butt and back. Otter Robe fell, but got back up, and as they began fighting again, Myron tripped over a chair. As he was pushing himself up with his hands, Myron felt a hard blow to his head and blood came down. When he looked up, he saw Otter Robe with a knife in his hand. Otter Robe then ran from the house.

Lyle testified that Otter Robe came upstairs where he was and took two knives out of a backpack and showed the two knives to him. Otter Robe then slid the knives up his sleeves. After Otter Robe had gone back downstairs, Lyle heard a commotion downstairs. He went downstairs and found Myron holding his head, which was bleeding.

Otter Robe denied having two knives or a backpack. He testified that the fight began when Myron swung a cast iron frying pan at him, hitting him in the finger. Otter Robe stated that he then held Myron down, but left when Myron called for Lyle to bring a gun. Myron testified that he did not have a frying pan or other weapon in his hand, and Lyle testified that Myron never asked him to get a gun and there was not a gun in the house.

Officer Doug Wilkinson arrived at Myron's house shortly after Otter Robe had left and he observed Myron bleeding. Wilkinson spoke with Myron and Lyle about the incident and then went to Flying Horse's apartment to talk to Otter Robe. When Wilkinson arrived at Flying Horse's home, Otter Robe ran out the door, and back to Myron's home. Otter Robe was detained by April Archambault, Myron's daughter, until Wilkinson arrived and arrested him. Wilkinson recovered two knives from Derockbrain, who testified that when Otter Robe came back to Flying Horse's apartment, he threw the knives into the window well outside of the apartment.

William Burkhard, a physician's assistant, testified that Myron's injury was more consistent with a knife than blunt force trauma. Teresa Olsen, a physician's assistant, testified that Otter Robe had an injury on his finger that was not likely caused by a frying pan.

United States v. Otter Robe, 333 Fed. Appx. 160 (8th Cir. 2009).

### B. Procedural Background

The Defendant was indicted on one count of assault with a dangerous weapon (Count I) and one count of assault resulting in serious bodily injury (Count II) on December 19, 2007. Trial commenced on February 19, 2008. The jury returned a verdict of guilty on both counts on February 21, 2008. The Court vacated the verdict on Count II and reduced the conviction to the

lesser included offense of assault by striking beating or wounding on February 27, 2008. The Defendant was sentenced to 77 months imprisonment on Count I and 6 months imprisonment on Count II on May 29, 2008. The Defendant appealed. The conviction was affirmed on June 29, 2009. Otter Robe, 333 Fed. Appx. at 163.

The Defendant filed the § 2255 motion now before the Court on May 24, 2010. He alleges ineffective assistance of counsel. Specifically, he argues (1) counsel failed to investigate and call the proper witnesses to support his claim of self defense, (2) counsel failed to hire an expert witness to challenge the Government's forensic evidence, and (3) counsel failed to require to the Government to prove the jurisdictional elements. The Government filed a response to the motion on July 26, 2010, in which it argued the motion should be denied.

## II. DISCUSSION

A motion made pursuant to 28 U.S.C. § 2255 requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A section 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A section 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

The burden of demonstrating ineffective assistance of counsel is on a defendant. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003). To be eligible for habeas relief based on ineffective assistance of counsel, a defendant must meet the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). A

defendant must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88; see also Wiggins v. Smith, 539 U.S. 510 (2003). This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Strickland v. Washington, 466 U.S. 688, 687 (1984). In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. A Court need not address the issue of the reasonableness if the defendant has failed to establish prejudice. Strickland, 466 U.S. at 696.

A defendant must also show that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the defendant. Id. at 690-91. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). Merely showing a conceivable effect is not enough. When evaluating the probability the result would have been different, a court views the alleged error in light of the totality of all the evidence before the jury to gauge the effect of the error. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006).

Where a defendant raises multiple claims of ineffective assistance, the claims must be

4

examined independently rather than collectively.  Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002); Griffin v. Delo, 33 F.3d 895, 903-04 (8th Cir. 1994).

      A.      **Failure to Call Witnesses**

The Defendant argues counsel was ineffective in that he failed to properly investigate and interview witnesses, specifically Marlon Bad Warrior and Jerome Otter Robe III, who could have testified that the victim, Myron Oka, had a history of violence and was intoxicated on the evening in question.  The Defendant argues this testimony would have bolstered his claim of self-defense.  The Defendant also argues expert witnesses should have been called to contradict the testimony of Government witnesses William Burkhard and Theresa Olsen.  The Government argues the decision not to call these witnesses was strategic.

      1.      **Marlon Bad Warrior and Jerome Otter Robe III**

The Defendant argues counsel did not properly investigate the case.  He claims Bad Warrior and Otter Robe III should have been called as witnesses.  Both men are brothers of the Defendant.  The Defendant argues they would have been able to testify that Oka has violent tendencies and this would have bolstered his claim of self-defense.  The argument is supported by affidavits which purport to be from Bad Warrior and Otter Robe III.  See Case No. 1:10-cv-01013, Docket No. 2, pp. 15-16.  The affidavits are not in proper form as they have not been sworn before a notary public.  Both affidavits are identical save for the names.  The only relevant statement in the affidavits is that "I know from personal experience that Myron Oka has a tendency to attack others without provocation while drinking."  See Case No. 1:10-cv-01013, Docket No. 2, pp. 15-16.

In response, the Government has submitted the affidavit of David Fransen, the attorney

who represented the Defendant during his trial.  See Case No. 1:10-cv-01013, Docket No. 11. Fransen states that he interviewed both men but neither mentioned that Oka had violent tendencies.  In addition, Fransen learned during his investigation that Bad Warrior was heavily intoxicated on the night in question and Otter Robe III had no first-hand knowledge of the night in question.  Furthermore, Fransen learned from Allen Derockbrain that Oka did not have a reputation for violence.  Fransen decided that it would not benefit his client to call either man or attempt to present evidence of Oka having a reputation for violence.

The decision whether or not to call a particular witness is a matter of trial strategy that is nearly unchallengeable.  United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005).  Such decisions must be given a great deal of deference.  Griffin, 33 F.3d at 901-02.  In this case, counsel made an informed strategic decision not to call Bad Warrior and Otter Robe III after interviewing both men.  The Defendant's arguments and "affidavits" are not convincing. Counsel's decision was certainly reasonable under the circumstances and the Court will not engage in second guessing.

### 2. William Burkhard and Theresa Olsen

The Defendant argues counsel was ineffective in that he did not hire and call an expert witness to rebut the testimony of William Burkhard and Teresa Olsen.  Both Burkhard and Olsen are physician assistants.  The Defendant argues their testimony regarding the injuries to Oka and himself was "nothing more than a wild guess."  The Defendant testified at trial that the fight with Oka started when Oka swung a frying pan at him and hit him in the hand.  See Case No. 1:07-cr-10048, Docket No. 64, pp. 227-29.

Burkhard testified that he treated Oka in the Fort Yates, North Dakota, emergency room

in the early morning hours of February 20, 2007. See Case No. 1:07-cr-10048, Docket No. 64, pp. 139-56. Oka arrived by ambulance. The altercation occurred in McLaughlin, South Dakota. He had a four centimeter laceration to the back of his scalp with quite a bit of bleeding. The wound was closed with surgical staples. Burkhard testified the laceration was more consistent with a knife wound than blunt force trauma but could have been caused by any sharp object.

Olsen testified that she treated the Defendant in the Fort Yates emergency room on February 23, 2007. See Case No. 1:07-cr-10048, Docket No. 64, pp. 36-48. The incident involving the Defendant and Oka occurred on February 19, 2007. The Defendant was treated for abrasions on his left ring finger and right shin. The Defendant reported he had been in a fight five days prior to his visit to the emergency room. Both injuries were scabbed. No x-rays were taken. There was concern with infection in the finger. The finger injury did not involve a laceration. Olsen testified that just about anything can scrape across skin and cause an abrasion, even a frying pan. Olsen also testified the finger injury was not consistent with being smashed with a frying pan.

Both Burkhard and Olsen were fully licensed and certified physician's assistants with extensive emergency room experience. Burkhard has experience in the military as well where he treated injuries on the battlefield. Both were qualified to offer the limited opinions that they did. In and of itself and assuming the necessary skill, training and experience, there is nothing improper about allowing a physician's assistant to offer expert testimony under Rule 702 of the Federal Rules of Evidence. See United States v. Smith, 520 F.3d 1097, 1105 (9th Cir. 2008)

Fransen explained in his affidavit that he considered calling witnesses to contradict the testimony of Burkhard and Olsen. See Case No. 1:10-cv-01013, Docket No. 11, p. 4. Fransen

7

determined their testimony could not be effectively rebutted by expert testimony. He concluded any witness he called regarding the injury to Oka would have testified similarly to Burkhard. As to Olsen, her testimony was rather limited and she was unable to provided a definitive cause for the injuries to the Defendant. Ultimately, cross-examination was decided upon as the most effective way to deal with the testimony of both these witnesses.

The Defendant has failed to show counsel's strategic decisions regarding how to best handle the testimony of Burkhard and Olsen was unreasonable. His suggestion that their testimony could have been rebutted through expert testimony is nothing more than speculation. The record reveals both witnesses were subjected to effective cross-examination. The decision to deal with their testimony through cross-examination alone does not appear unreasonable under the circumstances. The argument fails.

      **B.**      **Failure to Hire Defense Expert**

The Defendant argues counsel was ineffective in failing to have the knives subjected to forensic analysis. He claims such analysis would have bolstered his argument that he did not assault Oka with a knife. But, he fails to fully explain how such testing would have helped his case.

The Government did not present any evidence that the Defendant's blood, fingerprints, or DNA was found on the knives. Kristin Walti, from the South Dakota Forensic Laboratory, testified for the Government that she examined the knives recovered from the crime scene. See Case No. 1:07-cr-10048, Docket No. 64, p.160. Walti testified that she was unable to recover any fingerprints from the knives. See Case No. 1:07-cr-10048, Docket No. 64, p.162. On cross-examination she testified testing indicated the possible presence of blood on the knives. See

8

Case No. 1:07-cr-10048, Docket No. 64, p.164. No testing was conducted to determine who's blood was one the knives. See Case No. 1:07-cr-10048, Docket No. 64, p.164. Given the limited nature of Ms. Walti's testimony, it is difficult to understand how the Defendant could have been prejudiced by the lack of testing by the defense.

The Government did not introduce any forensic evidence which required rebuttal. Instead, the Government relied on the testimony of Allen Derockbrain to connect the Defendant to the knives. Derockbrain testified that the Defendant took the knives in question from the apartment of Joe Flying Horse, Derockbrain's father, and later when the Defendant returned to the apartment Derockbrain observed him throw the knives in a window well. See Case No. 1:07-cr-10048, Docket No. 64, pp. 17-19. Forensic examination of the knives was not a significant issue at trial.

There is no evidence defense counsel was ineffective in not having the knives submitted for forensic analysis. The argument fails.

### C. Jurisdictional Elements

The Defendant argues counsel was ineffective in that he failed to require to the Government to prove all the essential elements of the charges. Specifically, the Defendant argues counsel failed to require the Government to prove he was an Indian and the offenses occurred in Indian Country.

The Defendant, on advice of counsel, signed a stipulation wherein he acknowledged that he is an Indian and the site where the assault was alleged to have occurred was in Indian Country. See Case No. 1:07-cr-10048, Docket No. 43. The jury was instructed as to the stipulation. The Defendant does not now claim that he is in not an Indian or that the site of the

9

assault was not in Indian Country. In his affidavit, Fransen states that discovery materials provided by the Government clearly established the Defendant was an enrolled member of the Standing Rock Sioux Tribe. See Case No. 1:10-cv-01013, Docket No. 11, p. 5. The assault was alleged to have occurred in McLaughlin, South Dakota, which is located within the exterior boundaries of the Standing Rock Indian Reservation. The Defendant claimed self-defense and there was no suggestion the altercation occurred anywhere other than in McLaughlin. The filing of stipulations as to jurisdictional elements is very common and does not constitute ineffective assistance when there is no doubt as to the Defendant's Indian status or the location of the alleged offense. Requiring the Government to prove these jurisdictional elements needlessly extends the length of trial. Such testimony also unnecessarily adds to the cost of the trial and inconveniences the tribal officials who must testify. The argument is baseless.

### III. CONCLUSION

The Court has reviewed the entire record, including the briefs, transcript, and presentence investigation report and has a clear recollection of the proceedings themselves. The Defendant received a fair trial and the assistance of competent counsel.

Accordingly, it is **HEREBY ORDERED** that:

1. Otter Robe's § 2255 Motion is **DENIED**.

2. The Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

3. Upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). Therefore, a certificate of appealability will not be issued by this Court.

4. If the Defendant desires further review of his motion he may request issuance of a certificate of appealability by a circuit judge of the Court of Appeals for the Eighth Circuit in accordance with Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997).

**IT IS SO ORDERED.**

Dated this 14th day of September, 2010.

/s/ *Patrick A. Conmy*
Patrick A. Conmy, Senior District Judge
United States District Court